# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 09-20957-CIV-GRAHAM/TORRES

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

vs.

OSVALDO PITTERS AND
TERRELL J. KUYKENDALL,

       Defendants.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR FINAL JUDGMENTS AGAINST DEFENDANTS AND TO DISMISS DISGORGEMENT AND PREJUDGMENT INTEREST CLAIMS

This matter is before the Court on Plaintiff's Motion for Final Judgments Against Defendants Terrell Kuykendall ("Kuykendall") and Osvaldo Pitters ("Pitters") and to Dismiss Disgorgement and Prejudgment Interest Claims [D.E. 56]. The underlying case against remaining Defendants who have appeared in the case has been referred by consent for trial before the undersigned Magistrate Judge. The pending motion relates to defaulted Defendants who have not so consented. Accordingly, the motion remains pending before the District Judge originally assigned, the Honorable Donald L. Graham, and for which this Report and Recommendation is entered as the motion is now ripe for disposition. For the reasons that follow, the motion should be Granted.

## I.  BACKGROUND

On April 13, 2009, the Securities and Exchange Commission ("Commission") commenced this action by filing a Complaint against Kuykendall, Pitters, and a third defendant, Steven Ivester.  [D.E. 1].  The Commission sought to permanently enjoin all defendants from violating federal securities laws.  The SEC submitted that, among other things, Pitters and Kuykendall recorded fictitious revenues on the financial statements of VoIP, Inc., a small, publicly-traded Internet telecommunications company.  By recording the false revenue, Pitters and Kuykendall were able to inflate the revenues VoIP reported in periodic reports publicly filed with the Commission in 2004 and 2005.

The Commission personally served Pitters with the summons and complaint as reflected in the affidavit of service filed on May 13, 2009 [D.E. 7].  The Commission served Kuykendall through his attorney, as reflected on the acknowledgment of service filed on April 27, 2009 [D.E. 4].  On May 18, 2009, Ivester moved to dismiss two of the three counts against him, which led to the Commission filing an amended complaint the following day [D.E. 13].  The amended complaint contained the same factual allegations and alleged the same violations of the securities laws as the original complaint.  The Commission served the amended complaint on both Pitters and Kuykendall by mail as per Fed. R. Civ. P. 5.  Notably, no new claims were raised against the defendants and thus personal service of the amended complaint was not required under Rule 4.

Neither Kuykendall nor Pitters responded to the amended complaint, and the Commission applied for clerk's defaults against both [D.E. 17 and 18].  The clerk entered both defaults [D.E. 19 and 21].  The remaining procedural history is set forth in detail in the Commission's motions for default judgment against Pitters and Kuykendall [D.E. 27 and 32].  The Court granted both motions, entering permanent injunctions against Pitters on November 10, 2009 [D.E. 54] and Kuykendall on November 16, 2009 [D.E. 55].  In both judgments, the Court retained jurisdiction for 60 days to entertain further Commission requests for relief. [D.E. 54 at 6; D.E. 55 at 5].  The pending motion filed by the Commission now moves for civil penalties against each defaulted defendant, the entry of which will also resolve the disgorgement and prejudgment interest claims raised by the Commission.  The Commission thus seeks dismissal of those particular claims.

Despite proper service of the motion, neither Defendant has responded in opposition.  Consequently, under S.D. Fla. Local R. 7.1 the motion may be granted in toto by default.  We accordingly recommend that the motion be granted on this basis alone.  But in addition, we have reviewed the record as a whole to determine if the motion should be granted on its merits.  The record shows that the relief requested by the Commission should be granted on this basis as well.

That record shows that from April 2004 through March 2006, VoIP was in the business of developing, marketing, and selling voice-over-Internet and other telecommunication services and products.  Amended Complaint ¶10 [D.E. 13].  Pitters served as VoIP's Chief Financial Officer from May 2004 to October 2005 and its Vice

President of Finance from November 2005 to March 2006. *Id.* ¶4. From June 2004 to April 2006, VoIP employed Kuykendall as the General Manager of its subsidiary, known as DTNet. *Id.* ¶5.

During the April 2004 through March 2006 time period, VoIP's common stock was registered with the Commission pursuant to Section 12(g) of the Exchange Act. As an issuer of registered securities, VoIP was required to furnish the Commission with annual and quarterly reports in accordance with Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13. *Id.* ¶12. Furthermore, under Exchange Act Rule 12b-20, VoIP was required to include in the annual and quarterly reports it filed with the Commission information that was necessary to make the required statements, in light of the circumstances under which they were made, not misleading. *Id.* ¶13.

In June 2004, VoIP bought DTNet, a small private company that sold modems and other computer hardware products. VoIP elevated Kuykendall, who had been serving as DTNet's bookkeeper, to be its general manager. *Id.* ¶15. Shortly fter the acquisition, VoIP disseminated a press release projecting DTNet's 2004 sales revenues would reach $7.5 million. The company repeated that statement in reports filed with the Commission in August 2004. However, during that same time period, DTNet's sales fell because it did not have cash to purchase inventory and because of technical deficiencies with VoIP's voice-over-Internet system, among other things. Because DTNet was not paying its vendors, the company was not obtaining any new products to sell. *Id.* ¶¶16, 17, 21.

As of September 30, 2004, DTNet had 2004 revenues of no more than $1.4 million, most of which it had earned prior to VoIP acquiring it in June.  As of November, DTNet had generated, at most, $400,000 since VoIP acquired it.  By no later than the fall of 2004, Pitters and Kuykendall knew DTNet's 2004 sales would be substantially less than the $7.5 million VoIP had projected. In response to the significant shortfall between DTNet's projected and actual sales, Pitters directed Kuykendall to record fictitious sales revenue on DTNet's financial reports.  Kuykendall complied, and recorded almost $1.4 million in fictitious revenues from the purported sale of computer hardware and management services to at least six companies that purportedly took place from October 2004 through March 2005.  *Id.* ¶¶22-24, 29.

Kuykendall prepared DTNet's 2004 year-end financial reports, which included approximately $800,000 of the $1.4 million in fictitious revenues, and forwarded them to Pitters for incorporation into VoIP's consolidated financial statements.  Pitters included the fictitious revenues in VoIP's 2004 statements, which were then reported to Ivester.  Pitters also prepared and compiled the 2004 third-quarter and annual reports VoIP filed with the Commission, which contained the inflated revenue figures. The third-quarter report inflated VoIP's revenues by 47 percent, and the annual report falsely inflated VoIP's revenues by 43 percent for 2004.  *Id.* ¶¶19-20, 31-34, 45.

The cycle of lagging sales and false recording of transactions repeated itself during the first quarter of 2005.  In November 2004, VoIP had publicly projected that DTNet's 2005 sales totals would again reach $7.5 million.  As the end of the first quarter approached in March 2005, Pitters and Kuykendall already knew that due to

the ongoing financial problems, DTNet was not likely to meet those projections.  Pitters again directed Kuykendall to inflate DTNet's performance by recording fictitious revenue.  Kuykendall again complied, recording approximately $605,000 in fictitious revenue from purported sales to the same six companies as of March 31, 2005.  *Id.* ¶¶26-30, 35.

Kuykendall again sent DTNet's statements to Pitters for incorporation into VoIP's consolidated financial statements, and Pitters again included the bogus revenues in VoIP's statements that he forwarded to Ivester.  The fictitious sales inflated VoIP's revenue by 43 percent for the first quarter of 2005.  VoIP included these bogus revenue figures in the first-quarter 2005 report it filed with the Commission.  *Id.* ¶¶19-20, 30-31, 35, 46.

Exchange Act Rule 13a-14 required Pitters, while serving as VoIP's CFO, to certify in writing the reports and financial statements VoIP filed with the Commission were accurate.  Although he knew they reflected fictitious revenues, Pitters certified in writing the accuracy of the 2004 third-quarter and annual reports, and the first-quarter 2005 report.  In addition, Pitters provided ledgers, journals and invoices reflecting the bogus revenues to VoIP's auditors in connection with their 2004 year-end audit.  *Id.* ¶¶36-38.

## *II.  ANALYSIS*

Based on these records facts, the Commission asks that the Court impose civil monetary penalties of $130,000 each against Pitters and Kuykendall under section 20(d) of the Securities Act of 1933 and section 21(d)(3) of the Securities Exchange Act of 1934.   These two statutes are virtually identical and establish three tiers of penalties.  Under the "First Tier" the court may impose a penalty of up to (i) $6,500 on a individual defendant for each violation or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation.  Under the "Second Tier" the court may impose a penalty of up to (i) $65,000 on individual defendant for each violation or (ii) the gross amount of pecuniary gain to defendant as a result of the violation.  The Second Tier applies where the violation involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.  Finally, under the "Third Tier" the court may impose a penalty of up to (i) $130,000 on an individual defendant for each violation or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation.[1]  The Third Tier applies to cases in which the requirements of a Second Tier penalty are present *and* the violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

Any civil penalty is to be determined by the Court "in light of the facts and circumstances" of the particular case.   15 U.S.C. § 77t(d)(2)(A); 15 U.S.C. § 78u(d)(3)(b)(I).  Factors courts have considered include the egregiousness of the

---

[1]      These numbers are based on the Federal Civil Penalties Inflation Adjustment Act of 1990.  *See* 17 C.F.R. Pt. 201, §§ 201.1003, Tbl. III to Subpt. E, 70 FR 7606-1 at *7607.

violation, the isolated or repeated nature of the violations, the degree of scienter involved, whether the defendant concealed his trading; and the deterrent effect given the defendant's financial worth. *SEC v. Sargent*, 329 F.3d 34, 42 (1st Cir. 2003); *SEC v. Yun*, 148 F. Supp. 2d 1287, 1295 (M.D. Fla. 2001); *see also SEC v. One Wall Street, Inc.*, No. 06-CV-4217(NGG)(ARL), 2008 WL 63256, at *4 (E.D.N.Y. Jan. 3, 2008) ("In determining whether civil penalties should be imposed, and the amount of fine, courts look to a number of factors, including: (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; (5) whether the defendant has admitted wrongdoing; and (6) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.")

Based on the undisputed record in this case, there is no question that Pitter's and Kuykendall's conduct involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons" by causing hundreds of thousands in investor losses. Therefore, upon consideration of all the factors, we agree with the Commission that a Third Tier penalty is warranted. *In the Matter of Jay Houston Meadows*, Admin. Proc. File No. 3-8257, 1996 SEC LEXIS 1194 (May 1, 1996), *aff'd*, 119 F.3d 1219, 1228 (5th Cir. 1997) (the court noted the magnitude of investor losses (more than $600,000) in affirming a $100,000 penalty); *SEC v. Friendly Power Company LLC*, 49 F. Supp. 2d 1363 (S.D. Fla. 1999) (ordering

a third-tier penalty because defendants' violation of securities laws created a
substantial risk that investors would lose their investments); *SEC v. Rosenfeld*, No.
97CIV.1467WHPRLE, 2001 WL 118612, at *4 (S.D.N.Y. Jan. 9, 2001) (defendant's
fraudulent scheme to inflate value of stock and distribute unregistered stock caused
more than $12 million in losses to investors and justified Court imposing third tier
penalty of more than $12 million); *SEC v. Manterfield*, No. 07-10712-RGS, 2009 WL
935953, at *3 (D. Mass. Apr. 8, 2009) (defendant assessed $130,000 in civil penalty
where his ill-gotten gains exceeded $2,300,000).

In addition to the fact that these defendants' conduct created a substantial risk
of loss to investors, their conduct was not an isolated occurrence, and instead took place
repeatedly over several months.  A significant Third Tier penalty is called for on this
record.  And as neither defendant has appeared or demonstrated any reason to reduce
the penalty due to his individual financial condition, the appropriate penalty should
not be reduced based on that financial condition.  *Cf. Yun*, 148 F. Supp. 2d at 1297-98
(imposing civil penalty of $100,000 despite SEC request for $807,000 penalty and
defendant's "significant levels of misconduct" because defendant's net worth was only
$264,2820); *SEC v. Pardue*, 367 F. Supp. 2d 773, 777-78 (E.D. Pa. 2005) (imposing civil
penalty of $25,000 despite SEC's request for a $136,697 fine and defendant's "very
serious" securities law violations due to defendant's negative net worth).

Finally, we agree with the Commission that the Court should also impose a
penalty against both defendants as a deterrent to others against violating the

securities laws, an important factor to consider in assessing an appropriate civil

penalty:

> A monetary penalty is designed to serve as a deterrent against securities
> law violations. *See SEC v. Palmisano,* 135 F.3d 860, 866 (2d Cir.1998);
> *SEC v. Tanner,* 02 Civ. 306, 2003 WL 21523978, *2 (S.D.N.Y. July 3,
> 2003); *SEC v. Moran,* 944 F. Supp. 286, 296 (S.D.N.Y. 1996). As set forth
> in H.R. Report No. 616--the Report of the Committee on Energy and
> Commerce of the U.S. House of Representatives on the Remedy Act,
> "[T]he money penalties proposed in this legislation are needed to provide
> financial disincentives to securities law violations other than insider
> trading . . . Disgorgement merely requires the return of wrongfully
> obtained profits; it does not result in any actual economic penalty or act
> as a financial disincentive to engage in securities fraud . . . . The
> Committee therefore concluded that authority to seek or impose
> substantial money penalties, in addition to the disgorgement of profits,
> is necessary for the deterrence of securities law violations that otherwise
> may provide great financial returns to the violator . . . ."

*SEC v. Lybrand,* 281 F. Supp. 2d 726, 729-30 (S.D.N.Y. 2003) (citations omitted).

In sum, all the relevant factors in this record support the maximum civil penalty

allowable for Third Tier violations.  That is especially the case here where the

Commission is not pursuing additional relief (disgorgement and prejudgment interest)

that could have been asserted against the defendants.  For all of these reasons,

$130,000 penalties against Kuykendall and Pitters are well supported by this record

and entirely appropriate under federal law.

* * *

### III.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is hereby **RECOMMENDED** that Plaintiff's Motion for Final Judgment Against Defendants Terrell Kuykendall and Osvaldo Pitters [D.E. 56] should be **GRANTED** and that the Plaintiff's proposed Final Judgment (which shall be annexed to this Report and Recommendation) should be entered in its totality.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Donald L. Graham, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of March, 2010.

_____/s/ *Edwin G. Torres*_____
EDWIN G. TORRES
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 09-20957-CIV-GRAHAM/TORRES

SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

v.

OSVALDO PITTERS and
TERRELL J. KUYKENDALL,

       Defendants.
_____/

**FINAL JUDGMENT ORDERING A CIVIL PENALTY AGAINST
DEFENDANT OSVALDO PITTERS AND DISMISSING
DISGORGEMENT AND PREJUDGMENT INTEREST CLAIMS**

THIS MATTER is before the Court on the Plaintiff's Motion for Civil Penalties against Defendants Terrell Kuykendall and Osvaldo Pitters and to Dismiss Disgorgement and Prejudgment Interest Claims [D.E. 56].  The Court has reviewed the motion and the entire record. The Court finds the Commission has provided a sufficient factual basis and legal justification for the amount of the civil penalty it seeks against Pitters. Accordingly it is hereby **ORDERED AND ADJUDGED:**

1.    Plaintiff's motion is GRANTED.

2.    Defendant Osvaldo Pitters is Ordered to pay a civil money penalty of $130,000 pursuant to Section 21(d)(3) of the Securities Exchange Act of 1934 and Section 20(d) of the Securities Act of

1933.  The Commission's claims for disgorgement and prejudgment interest against Pitters are dismissed.

3.   Final Judgment is therefore entered against Defendant Osvaldo Pitters in the amount of $130,000, for which sum let execution issue, together with post-judgment interest beginning 30 days after the date of this order at the statutory rate of 0.34% per annum.

4.   Pitters shall pay the Final Judgment within 30 days to the Securities and Exchange Commission.  The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, together with a cover letter identifying Pitters as a defendant in this action, setting forth the title and civil action number of this action and the name of this Court, and specifying that payment is made pursuant to the Final Judgment.  Pitters shall simultaneously transmit photocopies of such payment and letter to Robert K. Levenson, Esq., Securities and Exchange Commission, 801 Brickell Avenue, Suite 1800, Miami, FL 33131.  By making these payments, Pitters relinquishes all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to him.

5.   The Court also finds that there being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk of the Court is ordered to enter this Final

Judgment forthwith notwithstanding the pendency of any other claims against other named Defendants in the amended complaint.

6.    The Court retains jurisdiction to enforce the terms of this Judgment and Order, as well as jurisdiction over other Defendants in the case not adjudicated herein.

**DONE AND ORDERED** in Chambers in Miami, Florida this ___ day of _____, 2010.


_____
DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE


Copies to counsel and parties of record

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 09-20957-CIV-GRAHAM/TORRES

SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

v.

OSVALDO PITTERS and
TERRELL J. KUYKENDALL,

       Defendants.
_____/

**FINAL JUDGMENT ORDERING A CIVIL PENALTY AGAINST**
**DEFENDANT TERRELL KUYKENDALL AND DISMISSING**
**DISGORGEMENT AND PREJUDGMENT INTEREST CLAIMS**

THIS MATTER is before the Court on the Plaintiff's Motion for Civil Penalties against Defendants Terrell Kuykendall and Osvaldo Pitters and to Dismiss Disgorgement and Prejudgment Interest Claims [D.E. 56]. The Court has reviewed the motion and the entire record. The Court finds the Commission has provided a sufficient factual basis and legal justification for the amount of the civil penalty it seeks against Kuykendall. Accordingly it is hereby

**ORDERED AND ADJUDGED:**

1.   Plaintiff's motion is GRANTED.

2.   Defendant Terrell Kuykendall is Ordered to pay a civil money penalty of $130,000 pursuant to Section 21(d)(3) of the Securities Exchange Act of 1934 and Section 20(d) of the Securities

Act of 1933.   The Commission's claims for disgorgement and prejudgment interest against Kuykendall are dismissed.

3.   Final Judgment is therefore entered against Defendant Terrell Kuykendall in the amount of $130,000, for which sum let execution issue, together with post-judgment interest beginning 30 days after the date of this order at the statutory rate of 0.34% per annum.

4.   Kuykendall shall pay the Final Judgment within 30 days to the Securities and Exchange Commission.   The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, together with a cover letter identifying Kuykendall as a defendant in this action, setting forth the title and civil action number of this action and the name of this Court, and specifying that payment is made pursuant to the Final Judgment.   Kuykendall shall simultaneously transmit photocopies of such payment and letter to Robert K. Levenson, Esq., Securities and Exchange Commission, 801 Brickell Avenue, Suite 1800, Miami, FL 33131.   By making these payments, Kuykendall relinquishes all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to him.

5.   The Court also finds that there being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk of the Court is ordered to enter this Final

Judgment forthwith notwithstanding the pendency of any other claims against other named Defendants in the amended complaint.

6.   The Court retains jurisdiction to enforce the terms of this Judgment and Order, as well as jurisdiction over other Defendants in the case not adjudicated herein.

**DONE AND ORDERED** in Chambers in Miami, Florida this ___ day of _____, 2010.

_____
DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE


Copies to counsel and parties of record